UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

------------------------------------------------------------- x
OHIO POLICE & FIRE PENSION FUND, :
OHIO PUBLIC EMPLOYEES RETIREMENT :
SYSTEM, STATE TEACHERS :
RETIREMENT SYSTEM OF OHIO, :
SCHOOL EMPLOYEES RETIREMENT :
SYSTEM OF OHIO, and OHIO PUBLIC :
EMPLOYEES DEFERRED :
COMPENSATION PROGRAM, :
:
                      Plaintiffs, :   Civil Action No. 2:09-cv-1054
:   Judge Graham
       v. :   Magistrate Judge Kemp
:
STANDARD & POOR'S FINANCIAL :
SERVICES LLC, THE MCGRAW-HILL :
COMPANIES, INC., MOODY'S CORP., :
MOODY'S INVESTORS SERVICE, INC., :
and FITCH, INC., :
:
                      Defendants. :
:
------------------------------------------------------------- x

## DEFENDANT FITCH, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Martin Flumenbaum (admitted *pro hac vice*)
Roberta A. Kaplan (admitted *pro hac vice*)
Julia Tarver Mason (admitted *pro hac vice*)
Tobias J. Stern (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: 212-373-3000
Facsimile: 212-757-3990

*Counsel for Defendant Fitch, Inc.*

Thomas D. Warren
BAKER & HOSTETLER LLP
3200 PNC Center
1900 East 9th Street
Cleveland, Ohio 44114-3485
Telephone: (216) 621-0200
Facsimile: (216) 696-0740

*Trial Counsel for Defendant Fitch, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT .......................................................................................................................... 2

I. Plaintiffs Are Required To Allege Facts That, If Proven, Demonstrate That Each Defendant Did Not Believe Their Credit Rating Opinions.................................................. 2

II. Plaintiffs Have Failed To Allege Any Facts Showing That Fitch Did Not Believe In The Accuracy Of Its Credit Rating Opinions At The Time They Were Issued ................... 5

III. Plaintiffs' Generalized Allegations About Conflicts Of Interest Similarly Fail To State A Claim ........................................................................................................................ 8

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*,
   651 F. Supp. 2d 155 (S.D.N.Y. 2009) ............................................................................. 2

*Ashcroft* v. *Iqbal*,
   129 S. Ct. 1937 (2009) ..................................................................................................... 3

*Gauvin* v. *Trombatore*,
   682 F. Supp. 1067 (N.D. Cal. 1988) ............................................................................... 4

*Gross* v. *Diversified Mortgage Investors*,
   431 F. Supp. 1080 (S.D.N.Y. 1977), *aff'd*, 636 F.2d 1201 (2d Cir. 1980) ...................... 5

*In re Lehman Bros. Sec. & ERISA Litig.*,
   No. 09 MD 2017(LAK), 2010 WL 545992 (S.D.N.Y. Feb. 17, 2010) ............................ 9

*Lippe* v. *Bairnco Corp.*,
   225 B.R. 846 (S.D.N.Y. 1998) ........................................................................................ 5

*In re Merrill Lynch & Co.*,
   273 F. Supp. 2d 351 (S.D.N.Y. 2003) ............................................................................. 7

*In re Nat'l Century Fin. Enters., Inc.*,
   580 F. Supp. 2d 630 (S.D. Ohio 2008) ........................................................................... 2

*O'Brien* v. *Nat'l Property Analysts Partners*,
   719 F. Supp. 222 (S.D.N.Y. 1989) ................................................................................. 3

*Pension Comm. of Univ. of Montreal Pension Plan* v. *Banc of Am. Sec. LLC*,
   446 F. Supp. 2d 163 (S.D.N.Y. 2006) ............................................................................. 3

*Rasidescu* v. *Midland Credit Mgmt., Inc.*,
   435 F. Supp. 2d 1090 (S.D. Cal. 2006) ........................................................................... 4

*In re Reciprocal of Am. (ROA) Sales Practices Litig.*,
   MDL No. 1551, Civ. No. 04-2078, 2007 WL 2900282 (W.D. Tenn. Sept. 28,
   2007) ................................................................................................................................ 3

*In re Salomon Analyst Level 3 Litig.*,
   350 F. Supp. 2d 477 (S.D.N.Y. 2004) ............................................................................. 3

*Schneider* v. *BJC Healthcare Sys.*,
   No. 4:08 CV 1721 HEA, 2009 WL 1176273 (E.D. Mo. May 1, 2009) ............................ 3

Defendant Fitch, Inc. ("Fitch") joins in the Joint Reply Memorandum being filed today on behalf of Standard & Poor's Financial Services LLC, The McGraw-Hill Companies, Inc. (collectively, "S&P"), Moody's Corp., Moody's Investors Service, Inc. (collectively, "Moody's"), as well as Fitch. However, because the Plaintiffs fail to allege any specific facts which would make it plausible that Fitch did not believe its credit rating opinions at the time that they were issued, Fitch respectfully submits this individual reply memorandum in further support of its motion to dismiss.[1]

## PRELIMINARY STATEMENT

As Plaintiffs themselves concede in their Opposition Brief (Opp. at 94-96),[2] in order to survive the instant motion to dismiss, their Complaint must allege that Fitch did not actually believe, at the time they were published, the accuracy of its credit rating opinions for the transactions Plaintiffs purchased that Fitch rated.[3] Yet while Plaintiffs repeatedly refer collectively to all three Defendants as the "Ratings Agencies" in their Complaint and Brief, they make few (if any) specific allegations about Fitch and fail to allege that Fitch did not honestly believe in the accuracy of its ratings at the time they were issued. As demonstrated below, Plaintiffs' strategy of simply lumping all three rating agency defendants together and asking the Court to impute to Fitch allegations that are either specific to one of the other two Defendants or that merely describe generic conduct by the

---

[1] By making this separate filing, Fitch is not suggesting that any of the Plaintiffs' allegations with respect to the other two defendants are sufficient to state a claim. As made clear by the Rating Agencies' Joint Reply Memorandum of Law in Further Support of Their Motion to Dismiss the Complaint ("Joint Reply Mem."), such allegations are insufficient. (Joint Reply Mem. at 1-3, 12-15, 40-43.) Rather, Fitch files this supplemental memorandum solely to underscore the absence of any specific allegations with respect to Fitch in particular.

[2] "Opp. at ___" refers to page numbers in the Ohio Funds' Memorandum of Law in Opposition to Defendant Rating Agencies' Motion to Dismiss, filed March 22, 2010.

[3] Here, as opposed to the other rating agency defendants, Fitch rated only approximately 128 out of 308, or 42 %, of the mortgage backed securities ("MBS") transactions that Plaintiffs claim to have purchased. (Compl. Exs. A-1 to E-2.)

"Rating Agencies" fails under well-settled principles of law. At best, Plaintiffs' allegations concerning Fitch demonstrate that Fitch has admitted that its ratings were not as predictive as it had "*originally*" hoped, and that Fitch subsequently revised its methodologies in the wake of a truly unprecedented financial crisis. These allegations do not prove that Fitch did not believe in its credit rating opinions at the time they were issued—if anything, they prove the opposite.

Moreover, while Plaintiffs' allegations concerning alleged conflicts of interest are insufficient as a matter of law to prove that *any* rating agency did not believe its ratings, Plaintiffs' failure to specify any facts that, if proven, would demonstrate that *Fitch* did not believe its ratings further requires dismissal of the claims against Fitch.

## ARGUMENT

### I.
### Plaintiffs Are Required To Allege Facts That, If Proven, Demonstrate That Each Defendant Did Not Believe Their Credit Rating Opinions

As demonstrated in the Joint Reply Memorandum (Joint Reply Mem. at 1-3, 40-43), in order to state a claim for negligent misrepresentation under either New York or Ohio law,[4] Plaintiffs must allege that Fitch did "not genuinely and reasonably believe" its credit rating opinions at the time that they were issued. (Opp. at 94); *see also In re Nat'l Century Fin. Enters., Inc.*, 580 F. Supp. 2d 630, 638 (S.D. Ohio 2008) ("'[S]tatements which contain the speaker's opinion are actionable . . . if the speaker does not believe the opinion and the opinion is not factually well-grounded.'") (quoting *Mayer v. Mylod*, 988 F.2d 635, 639 (6th Cir. 1993)); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 176 (S.D.N.Y. 2009) (a credit rating is an opinion that is actionable only "if the speaker does not genuinely and reasonably believe it or if it is

---

[4] As discussed in the Joint Reply Memorandum, New York law applies to Plaintiffs' negligent misrepresentation claim. (Joint Reply Mem. at III.A.) Fitch applies the law of both jurisdictions

2

without basis in fact"); *see also In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 490 (S.D.N.Y. 2004) ("*Level 3*") (stating that a "statement [of opinion] (unlike a statement of fact) cannot be false at all unless the speaker is *knowingly misstating* his truly held opinion") (emphasis added). Thus, in order to survive a motion to dismiss, Plaintiffs must, at a minimum, "plead[] factual content that allows the court to draw the reasonable inference" that Fitch did not believe its own credit rating opinions at the time they were published. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Moreover, it is black-letter law that a plaintiff must plead specific facts against each individual defendant in a case and "may not use collective references to a group of defendants as a pleading technique to blur important distinctions among defendants." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*, 446 F. Supp. 2d 163, 187 n.167 (S.D.N.Y. 2006). In other words, a plaintiff may not "repeatedly lump[] all Defendants together, without identifying which allegations apply to which Defendant," *Schneider v. BJC Healthcare Sys.*, No. 4:08 CV 1721 HEA, 2009 WL 1176273, at *2 (E.D. Mo. May 1, 2009), or "mask[] the lack of factual allegations against each defendant through broad allegations which combine the acts of several defendants to create the impression that all engaged in every aspect of the alleged fraud." *O'Brien v. Nat'l Property Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989); *see also In re Reciprocal of Am. (ROA) Sales Practices Litig.*, MDL No. 1551, Civ. No. 04-2078, 2007 WL 2900282, at *5 (W.D. Tenn. Sept. 28, 2007) (dismissing claim as to certain defendants because "[n]owhere in the[] allegations [did] the Plaintiff aver that [those] Defendants *in particular* made any material misrepresentation or omission") (emphasis added).

---

in this Memorandum, as the Complaint fails to allege facts sufficient to sustain a negligent misrepresentation claim under either—or, indeed any—law.

Here, as it relates to Fitch, Plaintiffs' Complaint boils down to little more than a series of allegations that refer to either (1) the "Rating Agencies" collectively or (2) specific rating agency defendants other than Fitch. Plaintiffs make generalized and undifferentiated allegations about the "Rating Agencies" in over 40 different paragraphs in the Complaint. (*See* Compl. ¶¶ 2-4, 6-9, 17, 19, 21, 23, 25, 36-38, 42, 51-52, 56, 65-66, 74, 76-81, 83, 91-94, 96, 98, 100, 102, 112, 122, 132, 142.) For example, Plaintiffs allege that the "Rating Agencies" collectively "falsely represented" the independence of their credit ratings, "succumbed to [conflicts of interest] and degraded their ratings standards," "utilized outdated and flawed methodologies for evaluating ABS issuances," and "failed to make adequate disclosures regarding the ratings process and their methodologies." (*Id.* ¶¶ 2, 7, 8, 91.)

But generalized allegations such as these about "Rating Agencies," even if assumed to be true, are plainly insufficient to demonstrate that Fitch did not honestly believe its own credit rating opinions. *See, e.g., Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090, 1101 (S.D. Cal. 2006) ("Regardless of the cause of action claimed, Plaintiff must, at a minimum, state sufficient facts to support any claim contained within the complaint, and *how these facts apply to each defendant*.") (emphasis added); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (where allegations are made against multiple defendants, "plaintiff must allege the basis of his claim *against each defendant* to satisfy Federal Rule of Civil Procedure 8(a)(2)") (emphasis added).

Similarly, while quoting repeatedly from various sources such as congressional hearings, documents produced to Congress, Securities and Exchange Commission ("SEC") findings, internal rating agency documents, and statements by former rating agency employees or the press (*see* Compl. ¶¶ 53, 54, 64, 66-75, 85, 86, 89, 91-94 (containing allegations about rating agencies other than Fitch)), Plaintiffs make a series of allegations about the conduct of S&P and Moody's, but

4

make no similar allegations concerning Fitch. Allegations about Fitch's co-defendants cannot substitute for allegations concerning Fitch itself. *See, e.g.*, *Lippe* v. *Bairnco Corp.*, 225 B.R. 846, 860 (S.D.N.Y. 1998) ("[P]laintiffs cannot simply 'lump' all the defendants together and allege that the purported acts of every defendant can be imputed to every other defendant."); *Gross* v. *Diversified Mortgage Investors*, 431 F. Supp. 1080, 1089 (S.D.N.Y. 1977) (holding that allegations against other defendants cannot operate as a "substitute" for the requirement that plaintiff allege facts with respect to the defendant at issue), *aff'd*, 636 F.2d 1201 (2d Cir. 1980).

## II.
## Plaintiffs Have Failed To Allege Any Facts Showing That Fitch Did Not Believe In The Accuracy Of Its Credit Rating Opinions At The Time They Were Issued

Given the above, what do Plaintiffs actually allege when it comes to Fitch? Plaintiffs' allegations with respect to Fitch are limited to a handful of paragraphs, not one of which even remotely suggests that Fitch did not honestly believe its credit rating opinions.

For example, Plaintiffs allege that Fitch is "the smallest of the Rating Agencies" and "holds an approximately 10 percent share of the world's credit ratings market." (Compl. ¶ 28.) Plaintiffs further allege that Fitch "heralded its purported objectivity and independence" (*id.* ¶ 50) and also note that in a November 12, 2002 statement, "Fitch stated it 'has always believed that objective indicators of reliability are critical components of rating agency recognition.'" (*Id.*)

As for the rest of the allegations concerning Fitch, Plaintiffs assert the relatively uncontroversial proposition that Fitch played a role in rating the securities that the Ohio Funds purchased during the Relevant Period. (*Id.* ¶ 28.) Plaintiffs further allege that Fitch, like the other rating agency Defendants, issued pre-sale reports for MBS that "customarily contained their preliminary ratings," that "[c]ommitments for the purchase and sale of these securities were often made based on the information contained in these reports," and that "[i]ssuers, brokers, underwriters, investment managers, and the Defendants knew that these pre-sale reports influenced purchase

decisions." (*Id.* ¶¶ 106, 116, 126, 136, 146.) Plaintiffs also allege generally that prospectuses for certain specific MBS that Plaintiffs purchased conditioned the issuance of the MBS on their obtaining Fitch's highest credit rating, and that Fitch subsequently assigned its highest rating to those transactions. (*Id.* ¶¶ 107, 117, 127, 137, 147.)

Finally, Plaintiffs' Complaint contains a single paragraph in which they allege that Fitch updated its MBS rating methodologies and models in December 2008. Specifically, Plaintiffs quote statements from Fitch's CEO in which he observes that Fitch's structured finance ratings did not perform as well as Fitch had expected them to:

> Reflecting its acknowledgement of the deficiencies in its ratings methodologies during the Relevant Period, in December 2008 Fitch announced new procedures related to [residential mortgage-backed securities] ratings. Fitch CEO Stephen Joynt conceded, "In retrospect, too many of our structured finance credit rating opinions have clearly not performed as well *as originally intended.* We have downgraded significant numbers of structured finance securities due to the performance of underlying assets and structures of deals. . . . Fitch has previously acknowledged that while we were aware of, and believed we accounted for many various risks posed by sub prime mortgages and the rapidly changing underwriting environment in the U.S. housing market in our models and analysis, we did not foresee the magnitude or the velocity of the decline in housing prices, nor the dramatic shift in borrower behavior brought on by the changing practices in the market. Nor did we appreciate the extent of dubious mortgage origination practices and fraud—by lenders and borrowers in the 2006-2007 period." Joynt also acknowledged, "building complex highly tranched securities on historical default probabilities does not always provide enough cushion for extraordinary variable economic asset performance." (*Id.* ¶ 90 (emphasis added).)

Viewed as a whole, the deficiency of the Complaint's specific allegations with respect to Fitch is clear. The Complaint alleges merely that: (1) Fitch stated that it had confidence in the independence of its ratings; (2) in December 2008, following a catastrophic market downturn, Fitch recognized that its opinions had not been as accurate as Fitch had hoped, and as a consequence Fitch reassessed some of its methodologies; (3) Fitch issued pre-sale preliminary ratings; (4) Fitch knew that some investors—not necessarily Plaintiffs—relied on those ratings; and (5) Fitch rated some of

6

the securities purchased by Plaintiffs. None of these allegations state—or even suggest—that Fitch did not believe the truth of its credit rating opinions as to any transaction, let alone the specific Fitch-rated securities that Plaintiffs allegedly purchased.[5]

In fact, the sole allegation in the Complaint which relates to the accuracy of Fitch's ratings is the statement by Fitch's CEO quoted above in which he admits the uncontroversial (if not obvious) fact that many of Fitch's credit rating opinions did not perform "as well as originally intended." That statement demonstrates the *opposite* of what Plaintiffs must allege here—Fitch's CEO makes clear that Fitch did in fact believe in its ratings "originally," *i.e.* when they were issued. (*Id.*) This statement—and Plaintiffs' observation in the same paragraph that Fitch revised certain procedures for rating residential mortgage-backed securities in December 2008—certainly does not come close to the type of particularized allegations necessary to sustain Plaintiffs' claims for negligent misrepresentation and violation of Ohio's Blue Sky laws.

Finally, although the Complaint relies heavily on a report issued by the SEC (*id.* ¶¶ 61-63, 74-75, 78, 80, 89, 91-95), and Plaintiffs concede that the SEC report "principally informs Plaintiffs' allegations" (Opp. at 80), that report does not identify any rating agency by name in its findings and does not conclude or even suggest that any rating agency, let alone Fitch, did not honestly believe its MBS credit rating opinions. The law is clear that such generalized statements by regulators do not constitute facts pleaded with particularity. *See In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 374 (S.D.N.Y. 2003) (holding that conclusions of the New York Attorney General

---

[5] Indeed, the only allegation in the Complaint that can even remotely be characterized as in any manner referring to Fitch's state of mind is a self-serving statement attributable to one of Fitch's competitors; in defending its own ratings, the representative of the competitor stated that Fitch and a third rating agency recklessly gave high ratings to keep the structured finance "machine" going. (Compl. ¶ 5.)

7

"fail[ed] to constitute well-pleaded facts").[6] And while Plaintiffs in their Opposition Brief point to allegations in the Complaint that recent government investigations have "uncovered" certain admissions by "Defendants' employees" (Opp. at 8, 24 n.18, 35), again Plaintiffs do not assert (nor can they) that any of those supposed statements were made by current or former employees of Fitch.

## III.
## Plaintiffs' Generalized Allegations About Conflicts Of Interest Similarly Fail To State A Claim

Given the above, Plaintiffs' theory that Fitch did not honestly believe its credit rating opinions boils down to the allegation that Fitch had a conflict of interest because the issuers of securities paid the Defendants (including Fitch) to provide credit rating opinions of the securities. (Compl. ¶¶ 6, 42-75.) But in all of Plaintiffs' citations to congressional hearings (*id.* ¶¶ 54, 64, 66-68, 85, 86), documents produced to Congress (*id.* ¶¶ 66, 88), SEC findings (*id.* ¶¶ 55, 61-64, 74, 75, 89, 91-94), or statements by other rating agencies (*id.* ¶¶ 53, 60, 66, 69-73), Plaintiffs do not cite *a single statement attributable to or about Fitch* that suggests that Fitch's ratings were affected by these alleged conflicts of interest. In any event, as noted above, generalized statements by regulators or statements by and about other Defendants do not constitute well-pleaded facts *against Fitch*.

Moreover, as discussed in the Joint Reply Memorandum, the "issuer-pays model" was widely discussed in the popular and financial presses well prior to Plaintiffs' alleged reliance. (Joint Reply Mem. at III.G.2.b.) Indeed, a court in the Southern District of New York has noted that "the risk that the ratings agencies operated under a conflict of interest because they were paid by the issuers had been known publicly for years," citing a January 2003 SEC study stating that "[c]oncerns have been expressed for a number of years about the potential conflict of interest that arises from the

---

[6] Moreover, as the Joint Reply Memorandum clearly demonstrates, Plaintiffs' allegations based upon congressional hearing testimony and newspaper articles are insufficient as a matter of law to plead that Fitch did not truly believe its credit rating opinions. (Joint Reply Mem. at III.D.)

8

fact that the largest credit rating agencies rely on issuer fees for the vast majority of their revenues." *In re Lehman Bros. Sec. & ERISA Litig.*, No. 09 MD 2017(LAK), 2010 WL 545992, at *4 (S.D.N.Y. Feb. 17, 2010) (alteration in original) (internal quotation marks omitted). Indeed, as discussed in the Joint Reply Memorandum, several courts have rejected allegations nearly identical to those here as insufficient to link potential rating agency conflicts of interest with alleged compromises in the rating process. (Joint Reply Mem. at 42-43 (citing *New Jersey Carpenters Vacation Fund et al. v. Royal Bank of Scotland Group, PLC et al.*, No. 08 CV 5093(HB), 2010 WL 1172694, *14 (S.D.N.Y. Mar. 26, 2010); *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, No. 08 Civ. 10637(LAK), 2010 WL 816623, at *5 (S.D.N.Y. Mar. 11, 2010); *In re Lehman Bros. Sec. & ERISA Litig.*, 2010 WL 545992, at *6; *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299, 309-10 (D. Mass. 2009)).) In fact, the very conflicts of interest that Plaintiffs contend produced false credit rating opinions—those inherent in the "issuer-pays model"—were *disclosed by Fitch* in its credit rating opinions, its pre-sale reports, and on its website. *See* Declaration of Tobias J. Stern Exs. A-C (providing examples of Fitch's disclosures concerning the issuer-pays model typical of those in presale reports and press releases Fitch published concerning the Fitch-rated securities at issue).

## CONCLUSION

For the reasons set forth above as well as those set forth in the Defendants' Joint Memorandum of Law and Joint Reply Memorandum, Fitch respectfully submits that this court should dismiss the Complaint against Fitch with prejudice.

Dated: April 19, 2010

                                        Respectfully submitted,

                                        By: /s/ Thomas D. Warren

| | |
|---|---|
| Martin Flumenbaum (admitted *pro hac vice*) | Thomas D. Warren |
| Roberta A. Kaplan (admitted *pro hac vice*) | BAKER & HOSTETLER LLP |
| Julia Tarver Mason (admitted *pro hac vice*) | 3200 PNC Center |
| Tobias J. Stern (admitted *pro hac vice*) | 1900 East 9th Street |
| PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP | Cleveland, Ohio 44114-3485 |
| 1285 Avenue of the Americas | Telephone: (216) 621-0200 |
| New York, New York 10019 | Facsimile: (216) 696-0740 |
| Telephone: 212-373-3000 | |
| Facsimile: 212-757-3990 | *Trial Counsel for Defendant Fitch, Inc.* |
| | |
| *Counsel for Defendant Fitch, Inc.* | |

## CERTIFICATE OF SERVICE

I certify that on the 19th day of April 2010, the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

                                                          /s/ Thomas D. Warren
                                                          Trial counsel for Fitch, Inc.