UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

_____

OHIO POLICE & FIRE PENSION FUND,
OHIO PUBLIC EMPLOYEES RETIREMENT
SYSTEM, STATE TEACHERS
RETIREMENT SYSTEM OF OHIO,
SCHOOL EMPLOYEES RETIREMENT
SYSTEM OF OHIO, and OHIO PUBLIC
EMPLOYEES DEFERRED
COMPENSATION PROGRAM,

                Plaintiffs,

                v.

STANDARD & POOR'S FINANCIAL
SERVICES LLC, THE MCGRAW-HILL
COMPANIES, INC., MOODY'S CORP.,
MOODY'S INVESTORS SERVICE, INC.,
and FITCH, INC.,

                Defendants.
_____

Civil Action No. 2:09-cv-1054

Judge Graham
Magistrate Judge Kemp

**THE RATING AGENCIES' JOINT RESPONSE TO THE OHIO FUNDS'
SECOND NOTICE OF SUPPLEMENTAL AUTHORITIES IN OPPOSITION TO
DEFENDANTS RATING AGENCIES' MOTION TO DISMISS**

      Defendants Standard & Poor's Financial Services LLC, The McGraw-Hill Companies, Inc., Moody's Corp., Moody's Investors Service, Inc., and Fitch, Inc. (collectively, the "Rating Agencies" or "Defendants") respectfully submit this response to Plaintiffs' Second Notice of Supplemental Authorities in Opposition to the Rating Agencies' Joint Motion to Dismiss (the "Notice") filed on May 5, 2010.  In the Notice, Plaintiffs Ohio Police & Fire Pension Fund, Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, School Employees Retirement System of Ohio, and Ohio Public Employees Deferred Compensation Program (collectively, "Plaintiffs") attach three documents: 1) the United States Supreme Court's decision in *Merck & Co.,* v. *Reynolds*, No. 08-905, 2010 WL 1655827 (U.S. Sup. Ct. Apr. 27,

2010); 2) a district court decision in *King County, Washington* v. *IKB Deutsche Industriebank AG*, Nos. 09-8387, 09-8822, 2010 WL 1702196 (S.D.N.Y. Apr. 26, 2010); and 3) the transcript of a court hearing in California state court in *California Public Employees' Retirement System* v. *Moody's Corp, et al.*, No. 09-490241 (Cal. Super. Ct. Apr. 30, 2010).  Plaintiffs claim that these decisions are relevant to the Defendants' pending Motion to Dismiss and, in their Notice, purport to set forth the bases for that assertion.  As explained below, however, none of these decisions affects the analysis with respect to the Motion to Dismiss in this case.

**<u>*Merck & Co.* v. *Reynolds* ("*Merck*")</u>**

Plaintiffs assert that the Supreme Court's opinion in *Merck* is relevant to the Rating Agencies' argument that Plaintiffs' claims are barred by the applicable statute of limitations.  In fact, to the extent that *Merck* is relevant at all here, it confirms that any claims based upon securities purchases made prior to November 20, 2007 are time-barred.  *Merck* held that "the limitations period in § 1658(b)(1) begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have discover[ed] the facts constituting the violation — whichever comes first."  *Merck*, 2010 WL 1655827, at *15 (internal quotation marks omitted; alteration in original).  And, as demonstrated in the Rating Agencies' Opening Brief, "[v]irtually all of the allegations underlying the Ohio Blue Sky claims and the negligent misrepresentation claim were widely reported in the press and *known to the investment community* prior to November 20, 2007."  (The Rating Agencies' Joint Memorandum of Law in Support of Their Motion to Dismiss the Complaint ("Op. Br.") at 46 (emphasis added); *see also id*. at 45-49).

Plaintiffs suggest that *Merck* undermines the Motion to Dismiss to the extent that it held that the statute of limitations does not begin to run upon "storm warnings."  (Notice at 2).  But the Rating Agencies' statute of limitations argument is not, as the Plaintiffs now claim, based upon "storm warnings."  As set forth in the Motion to Dismiss — and unlike the plaintiffs in *Merck* — Plaintiffs here knew, or a reasonably diligent plaintiff would have known, the facts on which Plaintiffs base their claims prior to November 20, 2007.  (Op. Br. at 46-49).  As a result, Plaintiffs' claims based on securities purchases before that date are time-barred and *Merck* con-

firms that conclusion.

### *King County, Washington* v. *IKB Deutsche Industriebank AG* ("*King County*")

Plaintiffs next suggest that the *King County* decision supports their argument that they have adequately alleged the loss causation element necessary for each of their claims. (Notice at 2-3). The court in *King County* addressed a single claim of common-law fraud — a claim not pled here[1] — and considered only *one* of the loss causation arguments made by Defendants here, *i.e.,* whether the respective plaintiffs' claims in *King County* "should be dismissed because they failed to account for the occurrence of the global liquidity crisis that began in the summer of 2007." (Notice at 3). On that point, however, the allegations in *King County* are so strikingly distinct from the allegations here that the opinion only serves to further demonstrate that Plaintiffs here have not adequately pled loss causation.

In *King County* — a case that involved an entirely different type of security than at issue here — it was alleged that "[o]nly four months" after the securities were issued, "the Rating Agencies abruptly downgraded" the notes to "'junk' status," allegedly leading the investment vehicle at issue to "unravel[] in a matter of days and enter[] [into] receivership" "[t]hree days" after the downgrades. 2010 WL 1702196, at *1, *3 (describing the securities as allegedly going "from having a probability of default of approximately zero to approximately one hundred percent in less than four months"). The defendants contended that the allegations failed to take into account the global liquidity crisis, and sought to dismiss based upon a failure to plead loss causation. The district court held that the "alleged conduct plausibly caused at least some proportion

---

[1] Accordingly, the *King County* court did not consider or address, *inter alia*, two additional, dispositive arguments raised here: 1) that the opinion nature of the Defendants' ratings precludes Plaintiffs' *non-fraud* claims both under constitutional principles and because Plaintiffs provide no plausible factual basis to assert that these opinions were not truly held by the Rating Agencies as would be required to plead an actionable misstatement; and 2) Plaintiffs' *non-fraud* claims are preempted under both federal law and controlling New York law. *See* Op. Br. §§ I, II, III.B, IV.A; The Rating Agencies' Joint Reply Memorandum of Law in Further Support of Their Motion to Dismiss the Complaint ("Reply Br.") §§ I, II, III.B, III.D.

of plaintiffs' losses" — although the court further recognized that "in a different factual context" a "'marketwide phenomenon causing comparable losses to other investors' . . . can be a sufficient basis on which to dismiss a complaint." *Id*. at *5 & n.64 (quoting *Lentell* v. *Merrill Lynch & Co.*, 396 F.3d 161, 174 (2d Cir. 2005)).  Here, unlike in *King County*, the securities at issue are not alleged to have defaulted, let alone to have done so immediately following some alleged "corrective disclosure," undermining any conclusory allegation that the Defendants' alleged actions here — and not the global financial crisis — somehow caused Plaintiffs' asserted losses.

Instead, Plaintiffs' attempt to plead loss causation rests on their unsupported and conclusory assertion that "[t]he ABS Plaintiffs purchased lost value when Defendants corrected the inflated ratings and/or the market became aware of the true credit risk of the putatively highly rated ABS." (The Ohio Funds' Memorandum of Law in Opposition to Defendant Rating Agencies' Motion to Dismiss ("Opp.") at 101 (citing Compl. ¶¶ 104, 114, 124, 134, 144).  As the *King County* court recognized, this is insufficient to plead loss causation.  *See* 2010 WL 1702196, at *2, *3 (recognizing that the standard for pleading loss causation requires "'more than an unadorned, the-defendant-unlawfully-harmed-me accusation'"; rather, a plaintiff must "allege 'facts that would allow a factfinder to ascribe *some rough proportion* of [its alleged] loss to [the defendant's alleged] misstatements." (citations omitted; emphasis in original; second alteration in original)).  And, unlike the *King County* plaintiffs, Plaintiffs here *acknowledge* that the global credit crisis caused the losses at hand, alleging that the value of the securities at issue "dropped precipitously" only "[w]hen the housing and credit markets finally collapsed[.]"  (Opp. at 101 (citing Compl. ¶ 9)).  Having failed to identify how the ratings caused them losses, and having conceded that the value of their securities hinged upon the global credit crisis, this is just the sort of "different factual context" in which, as the *King County* court held, a motion to dismiss is warranted.

**<u>California Public Employees' Retirement System v. Moody's Corp, et al. ("CalPERS")</u>**

Finally, Plaintiffs point to the transcript of a recent hearing in the *CalPERS* case in California state court in which a claim for negligent misrepresentation was sustained, over arguments

by the Defendants that the claim is barred by the First Amendment, the Credit Rating Agency Reform Act ("CRARA") and New York's Martin Act. (Notice at 4). Defendants respectfully maintain that the state court opinion in *CalPERS* was wrongly decided and is contrary to the weight of the well-reasoned authority outlined in detail in the Rating Agencies' Opening and Reply Briefs.[2]

First, purporting to rely on *Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*, 651 F. Supp. 2d 155 (S.D.N.Y. 2009), the *CalPERS* court held that ratings are not First Amendment protected opinions but rather "an economic activity designed for a limited target for the purpose of making money." (Transcript, at p. 15; holding that "economic activity" is "not First Amendment stuff"). Not only does *Abu Dhabi* say no such thing, but the conclusion is contrary to both U.S. Supreme Court precedent that holds that speech about marketable securities is no less constitutionally protected than other types of speech, *see Lowe* v. *SEC*, 472 U.S. 181, 210 n.58 (1985), and Sixth Circuit precedent that holds that credit ratings are absolutely protected under the First Amendment, *see Compuware Corp.* v. *Moody's Investors Services, Inc.*, 499 F.3d 520 (6th Cir. 2007). Moreover, *Abu Dhabi*, an earlier decision by the same judge (Scheindlin, J.) who decided *King County*, did not hold, as the *CalPERS* court contended, that the First Amendment did not apply to credit ratings. Rather, *Abu Dhabi* recognized the "well-established" rule that "under typical circumstances, the First Amendment protects rating agencies, subject to an 'actual malice' exception, from liability arising out of their issuance of ratings and reports because their ratings are considered matters of public concern." *Abu Dhabi*, 651 F. Supp. 2d at 175. Here, where Plaintiffs have alleged negligence in connection with publicly-disseminated credit ratings, we are undoubtedly operating under "typical circumstances" and Plaintiffs' claims are accordingly barred under the First Amendment. *See* Op. Br. § I; Reply Br. § I.[3]

---

[2] The Rating Agencies intend to seek immediate appellate review of the trial court's decision by petitioning the California Court of Appeal, First District, for a writ of mandate.

[3] It is again worth noting that this case involves predominately public offerings of *mortgage-backed se-*

Footnote continued on next page.

Similarly, the *CalPERS* court offered little analysis with respect to the preemption provisions contained in CRARA, instead relying exclusively on the prior decision of this Court in *In re National Century Financial Enterprises, Inc., Investment Litigation*, 580 F. Supp. 2d 630 (S.D. Ohio 2008) ("*NCFE*").  Yet, in *NCFE*, this Court, noting that the issue had received "little briefing" in that case, expressly stated that it was "refrain[ing] from deciding the issue until it has the benefit of full briefing from the parties."  580 F. Supp. 2d at 651-52.[4]  Moreover, both this Court in *NCFE* and the *CalPERS* court recognize that CRARA prohibits states from "tell[ing] NRSROs what ratings they should give or dictat[ing] how they arrive at their ratings."  *NCFE*, 580 F. Supp. 2d at 651; *see CalPERS* Transcript at p. 15 (noting that the point of CRARA is to "avoid having states set standards that might be conflicting with each other regarding how ratings should be conducted").  And *neither NCFE* nor *CalPERS* explains how actions at common law seeking to impose duties upon the Rating Agencies and hold them liable for allegedly faulty ratings and methodologies do not represent attempts to "regulate," "dictate," or "set standards" regarding Rating Agency conduct.  Such actions do (Op. Br. at 19-21), and the Supreme Court's decision in *Riegel* v. *Medtronic, Inc.*, holds that negligence litigation does indeed constitute regulation, 552 U.S. 312, 321 (2008).

Finally, while Plaintiffs argue that the *CalPERS* court rejected arguments concerning Martin Act preemption, it did not do so.  The court did not hold that the Martin Act does not pre-

---

Footnote continued from previous page.

*curities* registered with the SEC and arises out of Plaintiffs' claim that the securities in all of the offerings at issue (public and private) experienced "losses" as the market price absorbed the publicly-disseminated ratings and downgrades thereto.  *Abu Dhabi*, *King County* and *CalPER*S involved an entirely different type of security, the ratings on which were alleged to have been disseminated to only a small class of investors and, because the securities at issue had actually defaulted, plaintiffs' damages theories in those cases (unlike Plaintiffs' here) were not dependent on the actual public dissemination of the ratings at issue.

[4]  In any event, as the Rating Agencies set forth in their Motion to Dismiss (Op. Br. at 20, n.10), the allegations now before this Court are much broader than those involved in *NCFE*.

empt negligent misrepresentation claims.  Rather, it held that New York law — and thus the Martin Act — did not apply in that case. (Transcript, at pp. 14-15). California's choice-of-law analysis is unlike Ohio's, making *CalPERS* irrelevant on that point. *Compare* Restatement (Second) of Conflicts of Laws § 148 (1971) (describing "most significant relationship" test followed by Ohio courts), *with Reich* v. *Purcell*, 432 P.2d 727, 729 (Cal. 1967) (describing governmental interest analysis followed by California courts); *see also Dutciuc* v. *Meritage Homes, Inc.*, No. 09-866, 2009 U.S. Dist. LEXIS 121824, at *10 (D. Ariz. Dec. 9, 2009) (noting distinction between Restatement and governmental interest analysis approaches).  As the Rating Agencies argue, under Ohio choice-of-law rules, New York law should govern this dispute. (Op. Br. at 22-24).  If New York law applies, the law is plain that the Martin Act preempts Plaintiffs' claims. (*Id.* at 24-26).  Indeed, in the *Abu Dhabi* decision that Plaintiffs cite with respect to the arguments concerning the First Amendment (*see* Opp. at 19-20), the court, applying New York law, explicitly held that the Martin Act preempts claims for negligent misrepresentation.  *Abu Dhabi*, 651 F. Supp. 2d at 182.

    For these reasons, to the extent that the supplemental authorities cited by Plaintiffs have any relevance here, they support dismissal of this case.

Dated: May 13, 2010                             Respectfully submitted,

By: __/s/ Drew H. Campbell_ _____

Floyd Abrams (admitted *pro hac vice*)      Drew H. Campbell (0047197)
S. Penny Windle (admitted *pro hac vice*)    BRICKER & ECKLER LLP
Tammy L. Roy (admitted *pro hac vice*)     100 South Third Street
CAHILL GORDON & REINDEL LLP            Columbus, Ohio 43215
80 Pine Street                                           Telephone: (614) 227-2319
New York, New York 10005               Facsimile: (614) 227-2390
Telephone:  (212) 701-3000
Facsimile:  (212) 269-5420                 *Trial Counsel for Defendants The McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services LLC*

*Counsel for Defendants The McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services LLC*

| | |
|---|---|
| James J Coster (admitted *pro hac vice*) <br> Joshua M. Rubins (admitted *pro hac vice*) <br> SATTERLEE STEPHENS BURKE & BURKE LLP <br> 230 Park Avenue, 11th Floor <br> New York, New York 10169 <br> Telephone: (212) 818-9200 <br> Facsimile: (212) 818-9606 <br><br> *Counsel for Defendants Moody's Corp. and Moody's Investors Service, Inc.* | By:    /s/ Michael H. Carpenter <br>     Michael H. Carpenter <br>     Jeffrey A. Lipps <br> CARPENTER LIPPS & LELAND LLP <br> 280 Plaza, Suite 1300 <br> 280 North High Street <br> Columbus, Ohio 43215 <br> Telephone: (614) 365-4100 <br> Facsimile: (614) 365-9145 <br><br> *Trial Counsel for Defendants Moody's Corp. and Moody's Investors Service, Inc.* |
| Martin Flumenbaum (admitted *pro hac vice*) <br> Roberta A. Kaplan (admitted *pro hac vice*) <br> Julia Tarver Mason (admitted *pro hac vice*) <br> Tobias J. Stern (admitted *pro hac vice*) <br> PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP <br> 1285 Avenue of the Americas <br> New York, New York 10019 <br> Telephone: 212-373-3000 <br> Facsimile: 212-757-3990 <br><br> *Counsel for Defendant Fitch, Inc.* | By:    /s/ Thomas D. Warren <br>     Thomas D. Warren <br> BAKER & HOSTETLER LLP <br> 3200 National City Center <br> 1900 East 9th Street <br> Cleveland, Ohio 44114-3485 <br> Telephone: (216) 621-0200 <br> Facsimile: (216) 696-0740 <br><br> *Trial Counsel for Defendant Fitch, Inc.* |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 13, 2010, a true copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing by electronic receipt to the parties.

/s/ Drew H. Campbell
Drew H. Campbell (0047197)